# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO
_____

In Re

GUY TAYLOR CERCHIONE
CARLA MARIE CERCHIONE,

**Debtors.**

**Bankruptcy Case
No. 08-40655-JDP**

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

Jim Spinner, SERVICE, SPINNER & GRAY, Pocatello, Idaho,
Attorney for Trustee R. Sam Hopkins.

Randal J. French, BAUER & FRENCH, Boise, Idaho, Attorney for
Debtors.

## I.  <u>Introduction</u>

This case presents a new twist to a familiar contest in this Court:  a

trustee's objection to the debtor's claim to a homestead exemption.  Here,

MEMORANDUM OF DECISION - 1

chapter 7[1] trustee R. Sam Hopkins ("Trustee") objects to the homestead

exemption claimed by Debtors Guy Cerchione and Carla Cerchione on a

home that was under construction at the time Debtors filed their

bankruptcy petition.  Raising a novel argument founded upon a seldom-

used provision of the Idaho exemption statutes, Debtors insist that,

because they used the exempt proceeds from the sale of their former

homestead to partially finance the construction costs of the new house,

their new home is, without declaration or occupation, also exempt.

Trustee disagrees with Debtors' reading and application of  the statutes.

This Memorandum  resolves this dispute.[2]

## II.  Procedural History

On July 31, 2008, Debtors filed a chapter 7 petition.  Docket No. 1.  In

their schedule C, filed on August 25, 2008, they claimed a homestead

---

[1]   Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all rule references are to the
Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

[2]   This Memorandum constitutes the Court's findings of fact and
conclusions of law.  Fed. R. Bankr. P. 7052; 9014.

MEMORANDUM OF DECISION - 2

exemption on a house pursuant to Idaho Code § 55-1003, for the maximum

amount allowed by the statute, $100,000.  Docket No. 18.  While their

petition indicates that they were at that time residing at a home on

Cypress Avenue in Idaho Falls, Debtors claimed the homestead exemption

on property located on Barossa Drive, also in Idaho Falls.  Docket No. 18.

Trustee objected to Debtors' claim of exemption because Debtors

did not reside at the Barossa Drive property, nor had they provided

Trustee a copy of any recorded homestead declaration concerning that

house.  Docket No. 22.

Debtors responded to Trustee's objection.  Docket No. 24.  However,

thereafter, Debtors' filed an Amended Schedule C, now claiming their

homestead exemption under Idaho Code § 55-1008, and also claiming that

the homestead exemption protected several kitchen appliances.  Docket

No. 63.  Trustee filed his Objection to Amended Claim of Exemptions.

Docket No. 35.[3]  Debtors responded again.  Docket No. 38.

---

[3] In their initial response to Trustee's objection, Debtors stated that they "hereby amend Schedule C to assert an exemption under I.C. §§ 55-1003 and 1008."  Docket No. 24.  Debtors did not, at that time, file an amended schedule C.

MEMORANDUM OF DECISION - 3

The Court conducted an evidentiary hearing on Trustee's objection on November 4, 2008, and thereafter took the issues under advisement.

### III. Facts

Debtors formerly lived in Meridian, Idaho.  Guy[4] built homes for a living.  When the housing market began to falter, Guy sought other employment, ultimately accepting a job offer in Idaho Falls.  He moved there to begin his new job, while his family remained in Meridian awaiting the sale of the family's home.

In October, 2007, Debtors sold their Meridian home, netting $144,629.94 from the sale.  Ex. 103.  They made several offers to purchase various homes in Idaho Falls, but none were accepted.  Debtors and their

---

To be prudent, Trustee filed his Objection to Amended Claim of Exemptions to respond to Debtors' attempt to amend their exemptions.  Docket No. 35.  After the hearing, the Court brought this docket issue to the parties' attention in a telephonic status conference.  During this conference, Debtors agreed to file an amended schedule C, which they did.  Docket No. 63.  The parties also agreed that Trustee could rely upon the amended objection he had already filed, Docket No. 35, and that the Court could decide the issues based upon this record without further pleadings or hearing.

[4] When necessary, the Court refers to the individual debtors by their first names.  No disrespect is intended.

MEMORANDUM OF DECISION - 4

children moved into a house owned by Guy's mother.  While Debtors

originally contemplated purchasing this house, they ultimately decided

against it.  They instead elected to build the home on Barossa Drive.

In May, 2008, Debtors obtained a construction loan from the Bank of

Commerce ("Bank").  Under the terms of this loan, they were required to

contribute $100,000 as a down payment to the fund to be used for

construction of the house.  The remainder of the costs of construction, as

well as the price of the building lot, were to be advanced by the Bank, an

amount totaling approximately $163,500.  Ex. 101, 102; Docket No. 18.   The

$100,000 that Debtors used to pay the Bank came from the proceeds of the

sale of the Meridian home.

On May 17, 2008, Carla purchased a refrigerator, range, microwave

and dishwasher from Sears, at a cost of $7,655.47, for installation in their

new house.  Ex. 107, 204.[5]  Carla used a Sears credit card issued in her

name to make this purchase.  She later submitted a credit card statement

_____

[5]  Guy testified that the appliances were purchased in June, 2008, but the
receipts, submitted in evidence, bear a May 17, 2008 date.  The discrepancy is
immaterial here.

MEMORANDUM OF DECISION - 5

and the receipts concerning the appliance purchases to the Bank, which

reimbursed her in full by check from the construction funds.  *Id*.  Debtors

had two primary reasons for purchasing the appliances in this manner:

first, charging the purchase on the Sears credit card apparently enabled

Carla to a receive a discount; and second, Sears was willing to hold the

appliances for delivery and installation when Debtors' house was

completed.  The appliances were delivered to the Barossa Drive property

on August 12, 2008.

Twelve days earlier, on July 31, 2008, Debtors filed their chapter 7

bankruptcy petition.  The Bank was listed in Debtors' schedule D as

holding a secured claim on the Barossa Drive property for $165,000.

However, the Bank was not included on Debtors' creditor mailing matrix.

As a result, the Bank did not discover that Debtors had filed a bankruptcy

petition until Trustee later contacted it.  After learning about the

bankruptcy filing, the Bank stopped paying the subcontractors on the

construction project.  While local authorities have issued Debtors a

certificate of occupancy for the Barossa Drive home, as of the date of the

MEMORANDUM OF DECISION - 6

hearing, they had not yet moved in.

## IV. <u>Analysis and Disposition</u>

Section 522(b)(1) allows individual debtors to exempt property from property of the bankruptcy estate, and to thereby shield it from liquidation by a chapter 7 trustee. Under § 522(b)(2), a state may "opt out" of the exemption scheme provided in the Bankruptcy Code. If it opts out, debtors filing for bankruptcy relief in that state may claim only that property which would be exempt under state law. Idaho has opted-out of the federal exemptions. Idaho Code § 11-609. Therefore, Idaho's exemption laws control what property Debtors may exempt, and the resolution of issues in this case.

An Idaho debtor is permitted to claim an exemption in a qualifying homestead. Idaho Code § 55-1001, *et seq.*; *In re Field*, 05.1 I.B.C.R. 11, 13 (Bankr. D. Idaho 2005); *In re Yackley*, 03.1 I.B.C.R. 84, 84 (Bankr. D. Idaho 2003). Once properly established, the debtor may exempt up to $100,000 of equity in a homestead. Idaho Code § 55-1003.

As the objecting party, Trustee bears the burden of proving that

MEMORANDUM OF DECISION - 7

Debtor's claim of exemption is not proper.  Rule 4003(c); *Carter v. Anderson (In re Carter),* 182 F.3d 1027, 1029 n. 3 (9th Cir. 1999);  *In re Kline,* 350 B.R. 497, 502 (Bankr. D. Idaho 2005).  The validity of the claimed exemption is determined as of the date of filing of the bankruptcy petition.  11 U.S.C. § 522(b)(3)(A); *Culver, L.L.C. v. Chiu (In re Chiu),* 266 B.R. 743, 751 (9th Cir. BAP 2001); *In re Yackley,* 03.1 I.B.C.R. at 84.  The homestead exemption statutes are to be liberally construed in favor of the debtor.  *In re Kline,* 350 B.R. at 502 (citing *In re Steinmetz,* 261 B.R. 32, 33 (Bankr. D. Idaho 2001); *In re Koopal,* 226 B.R. 888, 890 (Bankr. D. Idaho 1998)).

Debtors originally claimed the Barossa Drive property exempt under Idaho Code § 55-1003, but later amended their schedules to claim it, and the appliances, exempt under Idaho Code § 55-1008.  The propriety of those exemption claims is discussed below.

### A.  Idaho Code § 55-1003

While Debtors originally claimed the Barossa Drive property exempt under Idaho Code § 55-1003, that statute does not establish a right to an exemption, but instead, merely sets the $100,000 limitation on a homestead

MEMORANDUM OF DECISION - 8

exemption established under other provisions of the Idaho statutes. Even so, the Court will consider whether Debtors can claim an exemption under the Idaho statutes providing for either an automatic homestead, or one established by declaration.

Under Idaho law, a homestead exemption may arise automatically "from and after the time the property is occupied as a principal residence by the owner . . . ." Idaho Code § 55-1004(1). Here, it is clear that, on the day they filed their bankruptcy petition, Debtors did not occupy the Barossa Drive property as their residence. Indeed, the house was still under construction at that time. Debtors did not, therefore, qualify for an automatic homestead exemption.

In the alternative, Debtors could have established a homestead exemption under Idaho Code § 55-1004(2), which protects a debtor's "unimproved or improved land that is not yet occupied as a homestead . . . ." However, to benefit from its protection, the statute requires that the debtor execute and record with the county a written declaration of homestead as to the property. Idaho Code § 55-1004(2); *In re Field,* 05.1

MEMORANDUM OF DECISION - 9

I.B.C.R. at 15; *In re Moore*, 01.4 I.B.C.R. 147 (Bankr. D. Idaho 2001).

Debtors neither executed nor recorded a declaration of homestead as to the Barossa Drive property.  As a result, Idaho Code § 55-1004(2) also is of no help to them.

B.  Idaho Code § 55-1008

Forsaking a homestead exemption established by occupation or declaration, Debtors instead rely upon Idaho Code § 55-1008 in support of their exemption claim.  That statute provides that:

> The proceeds of the voluntary sale of the homestead in good faith for the purpose of acquiring a new homestead, and proceeds from insurance covering destruction of homestead property held for use in restoring or replacing the homestead property, up to the amount specified in section 55-1003, Idaho Code, shall likewise be exempt for one (1) year from receipt, and also such new homestead acquired with such proceeds.

Idaho Code § 55-1008(1).  As can be seen, while the proceeds from the sale of a homestead are also protected from reach by creditors or a trustee, under this and similar statutes, the debtor must reinvest the sale proceeds

MEMORANDUM OF DECISION - 10

in another exempt homestead within one year or the exemption provided by the statute will lapse. *See England v. Golden (In re Golden)*, 789 F.2d 698, 701 (9th Cir. 1986); *Ford v. Konnoff (In re Konnoff)*, 356 B.R. 201, 208 (9th Cir. BAP 2006); *Gaughan v. Smith (In re Smith)*, 342 B.R. 801, 808 (9th Cir. BAP 2006); *In re Younger*, 373 B.R. 111, 116 n. 6 (Bankr. D. Idaho 2007).

In this case, Debtors' deadline to reinvest the proceeds from the sale of their Meridian homestead in another homestead would have expired on October 15, 2008. But prior to that date, Debtors paid the proceeds to the Bank to be used as part of the loan to construct their new home.[6] The evidence shows that construction on the Barossa Drive property was scheduled to be completed in September, 2008, at which time Debtors and the Bank had intended to convert the construction loan to a conventional

---

[6] The Idaho statutes do not specifically require that exempt sale proceeds be segregated, but nevertheless, to retain their exempt status, a debtor "must evidence an intent to use the proceeds to acquire a replacement homestead, or at least keep the funds identified and segregated in order that such a possibility has not been foreclosed." *In re Kierig*, 00.2 I.B.C.R. 64, 65 (Bankr. D. Idaho 2000). Here, Debtors submitted adequate evidence to show that the source of the down payment on the construction loan they made to the Bank was the Meridian house sale proceeds. Ex. 205; 104-106.

MEMORANDUM OF DECISION - 11

mortgage.  However, just prior to that time, the Bank learned about

Debtors' bankruptcy filing from Trustee, and it suspended all transactions

concerning Debtors' loan.

Based on this record, Debtors claim the Barossa Drive property, and

the appliances purchased for installation in that house, are exempt under

Idaho Code § 55-1008.

### 1. Exemption of the Barossa Drive House

Trustee points out that, on the petition date, the proceeds from the

sale of Debtors' Meridian house had been paid over to the Bank and

deposited in the construction account.  As a result, Trustee contends that if

Debtors wanted to claim the Barossa Drive property exempt as their

homestead, they must have either occupied it as their primary residence,

thus qualifying for an automatic homestead, or they must have executed

and recorded a declaration of homestead.  Because they did neither,

Trustee argues that the Barossa Drive property is not exempt.

In response, Debtors direct the Court's attention to the last phrase of

the statute, which provides that the sale proceeds "shall likewise be

MEMORANDUM OF DECISION - 12

exempt for one (1) year from receipt, *and also such new homestead acquired with such proceeds.*"  Idaho Code § 55-1008(1) (emphasis supplied).  Debtors contend that, by this language, the statute exempts not only the cash sale proceeds for one year, but also any new homestead purchased with those exempt proceeds.  As explained below, the Court agrees with Debtors.

### a. Statutory Interpretation

The objective of statutory construction "is to derive the intent of the legislature."  *State v. Payne*, ___ P.3d ___, 2008 WL 5205959 *22 (Idaho, Dec. 15, 2008).  It begins with the literal language of the statute.  *Id*. (citing *D & M Country Estates Homeowners Assoc. v. Romriell*, 59 P.3d 965, 970 (Idaho 2002)).  Where the statutory language is plain and unambiguous, the Court "must give effect to the statute as written, without engaging in statutory construction."  *State v. Barclay*, ___ P.3d ___, 2008 WL 4646058 *2 (Idaho Ct. App., Oct. 22, 2008); *Curlee v. Kootenai County Fire & Rescue*, ___ P.3d ___, 2008 WL 4595239 *6 (Idaho, Oct. 16, 2008).  Only when the statutory language is ambiguous should a court employ the rules of construction for guidance.  *Curlee*, 2008 WL 4646058 at *2.  "Moreover, unless a contrary

MEMORANDUM OF DECISION - 13

purpose is clearly indicated, ordinary words will be given their ordinary

meaning when construing a statute." *Curlee*, 2008 WL 4595239 at *2

(quoting *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints

v. Ada County*, 849 P.2d 83, 88 (Idaho 1993)) (quoting *Bunt v. City of Garden

City*, 797 P.2d 135, 138 (Idaho 1990)).  Finally, "[i]n determining the

ordinary meaning of a statute, 'effect must be given to all the words of the

statute if possible, so that none will be void, superfluous, or redundant.'"

*Ameritel Inns, Inc. v. Pocatello-Chubbuck Auditorium or Cmty. Ctr. Dist.*, 192

P.3d 1026, 1028 (Idaho 2008) (quoting *State v. Mercer*, 138 P.3d 308, 309

(Idaho 2006)) (additional citations omitted).

　　　The language of Idaho Code § 55-1008 is unambiguous, and

therefore, its plain meaning must be applied to the determination of the

issues in this case.  By assigning the common meaning to the terms used by

the legislature in this statute, the Court also concludes that Debtors'

Barossa Drive home is exempt.  In reaching this conclusion, three

considerations guide the Court.

　　　First, the last sentence of the statute refers to its first sentence.

MEMORANDUM OF DECISION - 14

Again, the statute provides:

> Except as provided in section 55-1005, Idaho
> Code, the homestead is exempt from attachment
> and from execution or forced sale for the debts of
> the owner up to the amount specified in section
> 55-1003, Idaho Code.  The proceeds of the
> voluntary sale of the homestead in good faith for
> the purpose of acquiring a new homestead . . . up
> to the amount specified in section 55-1003, Idaho
> Code, shall likewise be exempt for one (1) year
> from receipt, and also such new homestead
> acquired with such proceeds.

Idaho Code § 55-1008.  As can be seen, the first sentence of the statute

specifies that a homestead is exempt from attachment, execution or forced

sale in order to satisfy the debts of the owner, up to the $100,000 limit

established in Idaho Code § 55-1003.  The last sentence in turn provides

that the proceeds from the voluntary sale of an exempt homestead "shall

likewise" be exempt, but only for a period of one year.  If the last sentence

were read without the benefit of the first, the phrase "shall likewise"

would be meaningless.  Instead, this "shall likewise" reference constitutes

a clear indication that the Idaho legislature intended that not only the

homestead be protected, but also that the same exemption extend to the

MEMORANDUM OF DECISION - 15

proceeds of a voluntary sale of a homestead.

Second, the final clause in the last sentence of Idaho Code § 55-1008(1) refers to the clause that immediately precedes it.  More specifically, the statute provides that the exempt sale proceeds shall be exempt for one year "*and also* such new homestead acquired with such proceeds."  Idaho Code § 55-1008 (emphasis supplied).  The common meaning of the term "also" is "in addition to."  *Merriam-Webster's Collegiate Dictionary* 35 (11th ed. 2004).  When read together in this fashion, the two clauses of the last sentence of Idaho Code § 55-1008(1) provide that *both* the voluntary sale proceeds *and* the home acquired by the debtor with those proceeds are exempt from the reach of a debtor's creditors for the period of one year.

Under Trustee's construction of the statute, the protection afforded by the statute to a debtor who sells an exempt homestead would end upon disposition of the sales proceeds.  This approach requires the Court to essentially disregard the final clause of the second sentence of Idaho Code § 55-1008(1).  But the Court should instead give effect to every word and

MEMORANDUM OF DECISION - 16

clause of a statute.  *Ameritel Inns, Inc.*, 192 P.3d at 1028.  Doing so highlights the Idaho legislature's intent to exempt both the cash sale proceeds *and* the homestead "acquired" with such proceeds for one year.

As a third consideration in construing this statute, the Court acknowledges the legislature's use of the term "acquired" in describing the debtor's "new homestead."  To "acquire" means "to get as one's own". *Merriam-Webster's Collegiate Dictionary* 11 (11th ed. 2004).  Applying this common meaning, the statute protects any new homestead however acquired by the debtor.  The application of the statute is not limited solely to situations where the debtor purchases an existing house for use as a "new homestead."  It instead also covers other methods by which homesteads are acquired by a debtor, including, for example, where the debtor pays the exempt sale proceeds to a bank in furtherance of plans to buy a lot and build a new home.[7]

---

[7]  While this is an Idaho statute, and no case law is available to aid in construction of its terms in this regard, at least one decision from another state seems to support this approach.  *See In re Hodes*, 235 B.R. 104, 110 (Bankr. D. Kan. 1999), *aff'd,* 402 F.3d 1005 (10th Cir. 2005) ("debtor with a new house under construction at the time of the petition . . . would be entitled to claim the house

MEMORANDUM OF DECISION - 17

b.  Application of the Statute

Debtors contend that they are entitled to a homestead exemption on the Barossa Drive property under Idaho Code § 55-1008(1) because, within one year of receipt, they used identifiable funds from the sale of their Meridian homestead to help finance construction of a new homestead.  The Court concurs.

Applying the unambiguous, common meaning of the exemption statute, Trustee's contention that, because the Meridian house sale proceeds no longer existed on petition day, lacks merit.  Idaho Code § 55-1008(1) clearly evinces the Idaho legislature's intent to protect both the cash sale proceeds, and any home acquired with those funds, for one year after receipt of the proceeds.  The statute expressly accommodates those situations where, during the one-year safe harbor, the debtor uses the sale proceeds to acquire a new homestead when it prescribes that both the sale proceeds and the new homestead are exempt.

---

exempt, without any partition of the value of the unfinished construction at the time of the petition . . .").

MEMORANDUM OF DECISION - 18

Likewise, the fact that, on petition day, Debtors' new home was under construction but not yet completed is of no moment.  Debtors testified that they paid $100,000 to the Bank as a down payment on the loan to finance acquisition of the lot and construction of their home. Debtors testified that, after they made this payment, the Bank closed on the building lot, and construction began.  Finally, Debtors' undisputed testimony was that, in addition to the $100,000 they paid to the Bank, approximately $116,000 of the $163,000 construction loan funds committed by the Bank have been advanced, and approximately $62,000 of work has been completed for which the subcontractors have not yet been paid. Other work remains to be completed, and interest charges and late fees are also accruing on the outstanding accounts of the subcontractors.  From Debtors' perspective, not only has all of their payment to the Bank been spent on their new home, but also every penny of the $163,000 construction loan has been either expended or will be needed to meet construction costs.

The Court concludes that Debtors are entitled to a homestead exemption on the Barossa Drive home for the amount they have claimed in

MEMORANDUM OF DECISION - 19

their Amended Schedule C, $95,700.[8]

## 2. Exemption of the Appliances

Debtors also contend that because their appliances were purchased with exempt sale proceeds for installation in their new homestead, the appliances are likewise exempt under Idaho Code § 55-1008. Specifically, Debtors claim the dishwasher exempt in the amount of $700; the double oven and range in the amount of $1,200; the microwave in the amount of $300; and the refrigerator exempt in the amount of $2,100. Docket No. 63.

Debtors' argument misses the mark. The appliance sales receipts indicate that they were all purchased on May 17, 2008, five days *before* the $100,000 down payment was paid over to the Bank on May 22, 2008. The Bank reimbursed Debtors for the appliance purchases on June 30, 2008. Even so, the Court considers the timing of these events to be of little consequence. Whether the Debtors effectively used proceeds from the sale of the Meridian house to purchase the appliances, or whether they gave

---

[8] In their amended exemption claim, Debtors allocated a portion of their $100,000 homestead exemption to the uninstalled appliances, discussed below.

MEMORANDUM OF DECISION - 20

those proceeds to the Bank, which thereafter reimbursed them for the

purchases, the issue remains the same:  were the appliances part of their

homestead.  The answer to this question is that they were not.

The statute exempts both the proceeds and "such new homestead

acquired with such proceeds".  Idaho Code § 55-1008(1).  But under Idaho

law :

> "Homestead" means and consists of the dwelling
> house or the mobile home in which the owner
> resides or intends to reside, with appurtenant
> buildings, and the land on which the same are
> situated and by which the same are surrounded,
> or improved; or unimproved land owned with
> the intention of placing a house or mobile home
> thereon and residing thereon. . . . Property
> included in the homestead must be actually
> intended or used as a principal home for the
> owner.

Idaho Code § 55-1001(2).  In defining a homestead, the statute speaks of the

dwelling house, appurtenant buildings and the land upon which they sit.

The law does not include fixtures or appliances in this definition, especially

those which have not yet been installed in the debtor's house.

Moreover, the Idaho legislature has specifically addressed

MEMORANDUM OF DECISION - 21

exemption of appliances in another provision of the statutes.  Idaho law

allows an exemption for "[h]ousehold furnishings, household goods, and

appliances held primarily for the personal, family, or household use of the

individual or a dependent of the individual[.]"  Idaho Code § 11-605(1)(a).

If the Court were to adopt Debtors' argument, it would effectively give

Debtors overlapping exemptions.  In the absence of clear legislative intent,

the Court declines to construe the homestead exemption statute so broadly.

This Court has stated, that "it is clear from the plain language of

Idaho Code § 55-1008 that the proceeds from the voluntary sale of a home

may only be claimed exempt if they are held for the 'purpose of acquiring a

new homestead.'  If the proceeds are to be used for any other purpose they

may not be validly claimed as exempt."  *In re Mulliken*, 95 I.B.C.R. 73, 74

(Bankr. D. Idaho 1995).  Debtors' claim that their appliances are exempt

under Idaho Code § 55-1008 must be rejected.

V.  <u>Conclusion</u>

Debtors are entitled to a homestead exemption in the Barossa Drive

property in the amount claimed in their Amended Schedule C, $95,700.

MEMORANDUM OF DECISION - 22

Debtors are not entitled to a homestead exemption for the appliances they

purchased for installation in their new home.  A separate order will be

entered.

Dated:  January 6, 2009

_____

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 23