ORDERED PUBLISHED

FILED

SEP 08 2009

HAROLD S. MARENUS, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No. ID-09-1069-DJuMk |
| GUY TAYLOR CERCHIONE and CARLA MARIE CERCHIONE, | Bk. No. 08-40655-JDP |
| Debtors. | |
| R. SAM HOPKINS, Chapter 7 Trustee, | |
| Appellant, | |
| v. | O P I N I O N |
| GUY TAYLOR CERCHIONE; CARLA MARIE CERCHIONE, | |
| Appellees. | |

U.S. COURTS

SEP 1 4 2009

Rcvd_____Filed_____Time_____
CAMERON S. BURKE
CLERK, DISTRICT OF IDAHO

Argued by Video Conference and Submitted
on July 30, 2009

Filed - September 8, 2009

Appeal from the United States Bankruptcy Court
for the District of Idaho

Hon. Jim D. Pappas, Bankruptcy Judge, Presiding.

Before:  DUNN, JURY and MARKELL, Bankruptcy Judges

1  DUNN, Bankruptcy Judge:

2

3      Guy and Carla Cerchione (the "Cerchiones") filed a chapter
4  7[1] bankruptcy case and claimed a homestead exemption in a home
5  under construction.  The trustee objected to their homestead
6  exemption claim on the grounds that the Cerchiones had not
7  occupied the home property and had not executed and recorded a
8  declaration of homestead with respect to the home property at any
9  relevant time.  The bankruptcy court overruled the trustee's
10  objection to the Cerchiones' claimed homestead exemption.  We
11  AFFIRM.

12

13                          **I.   FACTS**

14      The Cerchiones formerly lived in Meridian, Idaho.
15  Mr. Cerchione was employed as a home builder, and when the
16  housing market went into decline, he sought other employment,
17  ultimately accepting a job in Idaho Falls.  On October 15, 2007,
18  the Cerchiones closed the sale of their former home in Meridian
19  and moved to Idaho Falls.  The net proceeds to the Cerchiones
20  from the sale were $144,629.94.

21      After several offers to buy existing homes in the Idaho
22  Falls area were not accepted, the Cerchiones decided to build a
23  new home.  While their new home (the "Property") was under
24  construction, the Cerchiones lived in the home of Mr. Cerchione's

25  _____

26      [1]    Unless otherwise indicated, all chapter and section
27  references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.
    All "Rule" or "FRBP" references are to the Federal Rules of
28  Bankruptcy Procedure, Rules 1001-9037.

                              2

1 mother.

2     The Cerchiones bought the lot on which they planned to build
3 their new home on May 23, 2008. At about the same time, the
4 Cerchiones obtained a construction loan ("Loan") from the Bank of
5 Commerce ("Bank"). Under the terms of the Loan, the Cerchiones
6 were required to contribute $100,000 as a down payment for
7 construction of their home on the Property. The balance of the
8 costs of construction, as well as the purchase price for the
9 homesite lot, were to be advanced by the Bank, in an amount
10 totaling approximately $163,500.

11     The Cerchiones filed their chapter 7 petition on July 31,
12 2008. In their schedules, they claimed an exemption in the
13 Property of $100,000, the maximum allowed under Idaho Code § 55-
14 1003. The Cerchiones claimed an ownership interest in the
15 Property in their Schedules A and D, and valued it at $280,000,
16 subject to the Bank's secured claim in the amount of $165,000.
17 Their petition, however, stated their address as on Cypress
18 Avenue in Idaho Falls, the home of Mr. Cerchione's mother.

19     The chapter 7 trustee, R. Sam Hopkins ("Trustee"), objected
20 to the Cerchiones' claimed exemption in the Property on the
21 grounds that they did not reside at the Property and they had not
22 made and recorded a Declaration of Homestead with respect to the
23 Property.

24     The Cerchiones responded to the Trustee's objection,
25 purporting to amend Schedule C to claim an exemption in the
26 Property pursuant to Idaho Code §§ 55-1003 and 55-1008. Idaho
27 Code § 55-1008 provides in relevant part:

28

3

1

>           The proceeds of the voluntary sale of the homestead in
2           good faith for the purpose of acquiring a new homestead
            . . . up to the amount specified in section 55-1003,
3           Idaho Code, shall likewise be exempt for one (1) year
            from receipt, and also such new homestead acquired with
            such proceeds.
4

5    The Cerchiones also claimed an exemption in certain appliances to

6    be installed at the Property that had not yet been delivered.[2]

7    The Cerchiones also filed a motion to compel abandonment of the

8    Property by the Trustee.

9         The Trustee filed a further objection to the Cerchiones'

10   "Amended Claim of Exemptions."  Among the grounds for objecting

11   to the Cerchiones' amended exemption claims, the Trustee asserted

12   that, "Debtors do not reside, and did not reside in the

13   [Property], on the date of filing of the bankruptcy or any other

14   relevant period of time, and unless they recorded a Declaration

15   of Homestead as required by Idaho Code § 55-1004, prior to filing

16   for bankruptcy, the exemption should be disallowed."  The Trustee

17   also objected to the Cerchiones' motion to compel abandonment.

18        The bankruptcy court conducted an evidentiary hearing

19   ("Hearing") on the Trustee's objection to the Cerchiones' amended

20   exemption claim on November 4, 2008.  At the Hearing, the

21   Cerchiones provided uncontradicted testimony that: 1) they had

22   paid $100,000 of the proceeds from the sale of their Meridian,

23   Idaho residence to the Bank for construction of a new home on the

24   Property in May, 2008, prior to their bankruptcy filing; 2) they

25   intended to reside at the Property; and 3) they had obtained a

26

27        [2]     The bankruptcy court ultimately disallowed the
     Cerchiones' claimed exemption in the appliances, and that
28   decision has not been appealed.

                                    4

1  certificate of occupancy for the Property.  The Trustee elicited
2  testimony from the Cerchiones that: 1) on the date of their
3  bankruptcy filing and through the date of the Hearing, they never
4  had resided at the Property, and 2) they never had signed and
5  recorded a Declaration of Homestead with respect to the Property.
6  Following the Hearing, the bankruptcy court took the matter under
7  advisement.

8       After supplemental briefing by the parties, but prior to
9  issuing its decision, the bankruptcy court held a status hearing
10  on the matter on December 2, 2008.  The record of proceedings for
11  the status hearing reflects that the Cerchiones' counsel agreed
12  to file an amended Schedule C to conform the Cerchiones'
13  schedules to their amended exemption claim, and the Trustee's
14  filed objection would be deemed an objection to the Cerchiones'
15  homestead exemption claim in their amended Schedule C.  The
16  Cerchiones filed their amended Schedule C on December 11, 2008,
17  claiming a homestead exemption in the Property under Idaho Code
18  § 55-1008 in the amount of $95,700.

19       On January 6, 2009, the bankruptcy court issued its
20  Memorandum of Decision ("Memorandum Decision")[3] and order
21  sustaining the Trustee's objection to the Cerchiones' claim of
22  exemption in appliances, but overruling the Trustee's objection
23  to the Cerchiones' claimed exemption in the Property.  The
24  Trustee filed a motion for additional findings and an amended
25  order ("Post-Hearing Motion") and a supporting memorandum,
26  raising the issue whether the Cerchiones' claimed exemption in

27

28       [3]     In re Cerchione, 398 B.R. 699 (Bankr. D. Id. 2009).

5

1   the Property expired a year after the sale of their Meridian,
2   Idaho residence, when they did not yet occupy the home.  The
3   Cerchiones opposed the Post-Hearing Motion, arguing that the
4   Trustee had not shown any manifest error of law or fact that
5   would justify the relief requested.

6       The bankruptcy court heard the Post-Hearing Motion on
7   February 11, 2009.  At the hearing, counsel for the Cerchiones
8   confirmed that the Cerchiones had moved into the new home on the
9   Property.[4]  Following argument, the bankruptcy court declined to
10  make further fact findings and stated its legal conclusions
11  orally, determining that its prior legal conclusions stated in
12  the Memorandum Decision were not clearly erroneous.  The
13  bankruptcy court entered its order denying the Post-Hearing
14  Motion on the same date.

15      The Trustee filed a timely Notice of Appeal on February 20,
16  2009.

17
18                      II.   JURISDICTION
19      The bankruptcy court had jurisdiction under 28 U.S.C.
20  §§ 1334 and 157(b)(2)(B).  We have jurisdiction under 28 U.S.C.
21  § 158.

22
23                       III.   ISSUES
24      1.   Whether the bankruptcy court erred in determining that
25  the Cerchiones could claim an Idaho homestead exemption in the
26
27  _____
       [4]    At oral argument on this appeal, the parties confirmed
28  that the Cerchiones continue to reside at the Property.

                              6

1  Property when they had not occupied the Property and had not
2  signed and recorded a Declaration of Homestead with respect to
3  the Property "at any relevant time."

4      2.   Whether the bankruptcy court erred in declining to find
5  that even if the Cerchiones were entitled to claim a homestead
6  exemption in the Property when they filed their bankruptcy case,
7  their exemption claim expired one year after the sale of their
8  Meridian, Idaho residence.

9      3.   Whether the bankruptcy court erred in not addressing the
10 temporary exemption and reversionary rights issues with respect
11 to the Cerchiones' exemption claim in the Property raised by the
12 Trustee.

13

14                 **IV.   STANDARDS OF REVIEW**

15     We review a bankruptcy court's conclusions of law, including
16 its interpretations of provisions of the Bankruptcy Code and
17 state law, de novo.  New Falls Corp. v. Boyajian (In re
18 Boyajian), 367 B.R. 138, 141 (9th Cir. BAP 2007), aff'd, 564 F.3d
19 1088, 1090 (9th Cir. 2009).  We review mixed questions of law and
20 fact de novo.  Wechsler v. Macke Int'l Trade, Inc. (In re Macke
21 Int'l Trade, Inc.), 370 B.R. 236, 245 (9th Cir. BAP 2007).  Such
22 issues are reviewed de novo "because they require consideration
23 of legal concepts and the exercise of judgment about the values
24 that animate legal principles."  Murray v. Bammer (In re Bammer),
25 131 F.3d 788, 792 (9th Cir. 1997).

26     A bankruptcy court's decision to deny a motion for
27 additional findings, reconsideration or an amended order or
28 judgment is reviewed for abuse of discretion.  Weiner v. Perry,

                              7

1 Settles & Lawson, Inc. (In re Weiner), 161 F.3d 1216, 1217 (9th

2 Cir. 1998); Hansen v. Moore (In re Hansen), 368 B.R. 868, 875

3 (9th Cir. BAP 2007); Nunez v. Nunez (In re Nunez), 196 B.R. 150,

4 155 (9th Cir. BAP 1996). A bankruptcy court necessarily abuses

5 its discretion if it bases its decision on an erroneous view of

6 the law. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405

7 (1990). Under the abuse of discretion standard, we must have a

8 definite and firm conviction that the bankruptcy court committed

9 a clear error of judgment in the conclusion it reached before

10 reversal is appropriate. AT&T Universal Card Svcs. v. Black (In

11 re Black), 222 B.R. 896, 899 (9th Cir. BAP 1998).

12      On appeal, we may affirm the bankruptcy court on any ground

13 supported by the record, even if it differs from the bankruptcy

14 court's stated rationale. Pollard v. White, 119 F.3d 1430, 1433

15 (9th Cir. 1997).

16

17                          **V. DISCUSSION**

18      There is no dispute with respect to the facts relevant to

19 this appeal. On October 15, 2007, the Cerchiones closed the sale

20 of their former home in Meridian, Idaho. In May 2008, they

21 acquired a new homesite lot in Idaho Falls, Idaho and paid

22 $100,000 from the sale proceeds of the Meridian home to the Bank

23 as a down payment for construction of a new home on the Property.

24 The Cerchiones filed their chapter 7 bankruptcy petition on July

25 31, 2008. At the time the Cerchiones filed for bankruptcy and at

26 the time of the Hearing, the Cerchiones were not residing on the

27 Property, as construction was not completed, and they had not

28 signed and recorded a Declaration of Homestead with respect to

1  the Property.  Accordingly, the record is clear that the
2  Cerchiones were not residing on the Property and had not signed
3  and recorded a Declaration of Homestead with respect to the
4  Property within one year following the closing of the sale of
5  their home in Meridian.  However, at the time of their bankruptcy
6  filing and at all relevant times thereafter, the Cerchiones
7  clearly intended to reside on the Property, and by the time of
8  the hearing on the Trustee's Post-Hearing Motion, the Cerchiones
9  were residing on the Property and reside there still.

10      The Trustee argues that the bankruptcy court's orders
11 concerning his objection to the Cerchiones' claimed exemption in
12 the Property should be reversed because the Cerchiones neither
13 resided on the Property nor executed and recorded a Declaration
14 of Homestead with respect to the Property at any relevant time.
15 We disagree for the following reasons.

16

17 A.   The Cerchiones' Exemption Claim Was Proper Under
          Idaho Code § 55-1008.
18

19      In this appeal, we are required to interpret several
20 provisions of Idaho's homestead exemption statutes.  Idaho has
21 "opted out" of the federal exemptions authorized under the
22 Bankruptcy Code; so, its citizens are limited to the exemptions
23 allowed under Idaho state law.  In re Millsap, 122 B.R. 577, 579
24 (Bankr. D. Id. 1991); § 522(b); Idaho Code § 11-609.

25

26      1.   Guidelines for interpretation

27      The Idaho Supreme Court has provided the following guidance
28 to interpreting Idaho laws:

9

The interpretation of a statute is a question of law over which this Court exercises free review.  State v. Hart, 135 Idaho 827, 829, 25 P.3d 850, 852 (2001).  The object of statutory interpretation is to give effect to legislative intent.  State v. Yzaguirre, 144 Idaho 471, 475, 163 P.3d 1183, 1187 (2007) (citing Robison v. Bateman-Hall Inc., 139 Idaho 207, 210, 76 P.3d 951, 954 (2003)).  The literal words of the statute provide the best guide to legislative intent, and therefore, the interpretation of a statute must begin with the literal words of the statute.  Id.  "In determining the ordinary meaning of a statute 'effect must be given to all the words of the statute if possible, so that none will be void, superfluous, or redundant.'"  State v. Mercer, 143 Idaho 108, 109, 138 P.3d 308, 309 (2006) (quoting In re Winton Lumber Co., 57 Idaho 131, 136, 63 P.2d 664, 666 (1936)).  Moreover, the Court must consider all sections of applicable statutes together to determine the intent of the legislature.  Davaz v. Priest River Glass Co., Inc., 125 Idaho 333, 336, 870 P.2d 1292, 1295 (1994).

Ameritel Inns, Inc. v. The Pocatello-Chubbuck Auditorium or Cmty. Center Dist., 146 Idaho 202, 204, 192 P.3d 1026, 1028 (2008).

Federal standards for statutory interpretation are essentially the same.  The starting point for interpreting a statute is review of its specific language.  "Where the statute's language is plain, a court will enforce it according to its terms; statutory analysis thus ends, unless there is an ambiguity or where following the literal reading would lead to an absurd result."  Culver, LLC v. Chiu (In re Chiu), 266 B.R. 743, 749 (9th Cir. BAP 2001) (citing United States v. Ron Pair Enters., Inc., 489 U.S. 235, 240-41 (1989)).

The starting point in discerning congressional intent is the existing statutory text, see Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999), and not the predecessor statutes.  It is well established that "when the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms."

Lamie v. United States Trustee, 540 U.S. 526, 534 (2004)

1  (citations omitted).

2      Idaho's homestead exemption statutes are liberally construed

3  in favor of debtors.  In re Millsap, 122 B.R. at 579 (citations

4  omitted); In re Kline, 350 B.R. 497, 502 (Bankr. D. Id. 2005); In

5  re Koopal, 226 B.R. 888, 890 (Bankr. D. Id. 1998).  See also

6  Sticka v. Casserino (In re Casserino), 379 F.3d 1069, 1072 (9th

7  Cir. 2004) ("While Oregon courts have never addressed whether a

8  residential leasehold qualifies as a homestead, they have held

9  that the homestead exemption should be liberally interpreted in

10 light of its goal to 'assure to the unfortunate debtor . . . the

11 shelter and influence of home.'") (citation omitted).  That

12 guiding principle recognizes the humane purpose behind enactment

13 of homestead exemption laws.

14     Through motives of humanity towards the debtor and his
       family, exemption and homestead laws have been enacted.
15     Prior to their enactment the law was as cruel as
       Shylock to the unfortunate debtor, and his wife and
16     children had to suffer. . . . They assure to the family
       a home.  "They mitigate the harshness of the cruel,
17     grasping creditor, and give to the unfortunate debtor a
       place of refuge and a gleam of hope."
18

19 Wright v. Westheimer, 2 Idaho 962, 28 P. 430, 433 (1891).

20     That said, courts are not free to "torture the language of

21 the state [exemption] statutes in the guise of liberal

22 construction."  In re Kline, 350 B.R. at 502 (citing In re Mason,

23 254 B.R. 764, 769 (Bankr. D. Id. 2000)).

24

25     2.  Analysis of the relevant statutes

26     A "homestead" is defined in Idaho Code § 55-1001(2) in

27 relevant part as follows:

28

                              11

1
2
3
4
5

> "Homestead" means and consists of the dwelling house . . . in which the owner resides <u>or intends to reside</u>, . . . and the land on which the same are situated and by which the same are surrounded, or improved; <u>or unimproved land owned with the intention of placing a house . . . thereon and residing thereon</u>. . . . Property included in the homestead <u>must be actually intended</u> or used <u>as a principal home for the owner</u>.  (emphasis added).

6   If these conditions are met, the debtor has an automatic

7   homestead exemption, in that the debtor is not required to record

8   a "declaration of homestead" in order to qualify for the

9   exemption.  <u>In re Koopal</u>, 226 B.R. at 890.

10       Historically, under Idaho law, the only way to "select" a

11  homestead was to execute, acknowledge, and record a declaration

12  of homestead.  <u>See</u> <u>White v. Stump</u>, 266 U.S. 310, 311 (1924),

13  which applied Idaho Comp. Stat. 1919 § 5462, subsequently

14  codified at Idaho Code § 55-1203:

15
16
17
18

> **Mode of selection.** -- In order to select a homestead, the husband or other head of a family, or in case the husband has not made such selection, the wife, must execute and acknowledge, in the same manner as a conveyance of real property is acknowledged, a declaration of homestead, and file the same for record.

19  That requirement was repealed in 1989.  S. 1225, Idaho Centennial

20  Leg., 1st Reg. Sess. (1989) ("Senate Bill 1225").[5]

21  _____

22
23
24

> [5]    The description of Senate Bill 1225 in its title states that it is "AN ACT . . . TO PROVIDE FOR AN AUTOMATIC HOMESTEAD EXEMPTION . . . ."  Among the purposes to be served by Senate Bill 1225 in the "Statement of Purpose RS22218C2" included in its legislative history is the following:

25
26
27
28

> The procedures currently required to record a homestead require that it include a legally sufficient description of the property, that it be acknowledged and notarized, and that it be recorded at the right
> (continued...)

12

Under Idaho Code § 55-1003, a homestead exemption is limited to no more than $100,000. The Cerchiones originally claimed a homestead exemption under § 55-1003 in the amount of $100,000 in the Property. Ultimately, in their amended Schedule C, the Cerchiones claimed an exemption of $95,700 in the Property under Idaho Code § 55-1008.

Idaho Code § 55-1008(1) deals with proceeds from the sale of a homestead and provides in relevant part as follows:

HOMESTEAD EXEMPT FROM EXECUTION--WHEN PRESUMED VALID.
(1)  Except as provided in section 55-1005, Idaho

---

[5](...continued)
time. In order to secure protection, the homeowner must be both aware of the act and able to afford legal counsel to properly file. The time limitations of the act make it impossible for a homeowner to file once bankruptcy proceedings have begun. Subsequently, this protection is being denied to Idaho Citizens who lack the knowledge and means to file for protection.

The Minutes of the Idaho Senate Local Government and Taxation Committee for March 6, 1989 reflect that Senate Bill 1225, among other things, "will make recording unnecessary for the homestead exemption." The Minutes of the Idaho House of Representatives Revenue and Taxation Committee for March 22, 1989 state the following from the report of the Chairman regarding Senate Bill 1225:

[The Chairman] stated that the procedures currently required to record a homestead require that it include a legally sufficient description of the property, that it be acknowledged and notarized, and that it be recorded at the right time. He said in order to secure protection, the homeowner must be both aware of the act and able to afford legal counsel to properly file. This legislation makes the homestead exemption automatic.

1        Code,[6] the homestead is exempt from attachment and from
2        execution or forced sale for the debts of the owner up
           to the amount specified in section 55-1003, Idaho Code.
3        The proceeds of the voluntary sale of the homestead in
           good faith for the purpose of acquiring a new
4        homestead, . . . up to the amount specified in section
           55-1003, Idaho Code, shall likewise be exempt for one
5        (1) year from receipt, <u>and also such new homestead
           acquired with such proceeds</u>.  (emphasis added).

6        A debtor's entitlement to claimed exemptions generally is

7 determined as of the date of such debtor's bankruptcy filing.

8 See <u>In re Chiu</u>, 266 B.R. at 751 (exemptions are determined as of

9 the date of bankruptcy filing and without reference to subsequent

10 changes in the character of the property claimed exempt); <u>In re</u>

11 <u>Lane</u>, 364 B.R. 760, 762-63 (Bankr. D. Or. 2007) ("Generally, only

12 facts existing on the filing date are relevant to determining

13 whether a debtor qualifies for her homestead exemption." (citing

14 <u>Harris v. Herman (In re Herman)</u>, 120 B.R. 127, 130 (9th Cir. BAP

15 1990)).

16        As noted above, on the date of the Cerchiones' bankruptcy

17 filing, they had paid $100,000 from the proceeds from the sale of

18 their Meridian, Idaho residence to the Bank for construction of a

19 new home on the Property in which they intended to reside.  By

20 its plain language, Idaho Code § 55-1008 provides two bases for

21 claiming a homestead exemption with respect to the disposition of

22 proceeds from the sale of a former homestead:  1) cash proceeds

23 are exempt up to the $100,000 cap set by Idaho Code § 55-1003 for

24 a period of one year from receipt;  2) an exemption up to the

25

26        [6]    Idaho Code § 55-1005 sets forth exceptions to homestead
27 exemption protections, including, for example, exceptions for
    mechanic's, laborer's or vendor's liens on the homestead
28 property.

1   $100,000 cap can be claimed in a new homestead acquired with such
2   proceeds, recalling from the "homestead" definition in Idaho Code
3   § 55-1001(2) that the homestead property "must be actually
4   intended or used as a principal home for the owner."  Since the
5   Cerchiones had paid $100,000 from the sale proceeds from their
6   Meridian home to acquire the Property within one year following
7   the closing of the sale at the time of their bankruptcy filing,
8   and they clearly intended to reside on the Property when the home
9   was completed, the bankruptcy court's conclusion that their
10  homestead exemption claim was valid pursuant to the terms of
11  Idaho Code § 55-1008 is consistent with its plain language.

12      As the party objecting to the Cerchiones' claimed homestead
13  exemption, the Trustee had the burden of proof to establish that
14  the exemption claim was not proper.  Rule 4003(c); Carter v.
15  Anderson (In re Carter), 182 F.3d 1027, 1029-30 n.3 (9th Cir.
16  1999).  The Trustee initially bore both the burden of producing
17  evidence to support his objection and the burden of persuasion.
18  Id.  However, once the Trustee produced evidence to rebut the
19  validity of the claimed exemption, the burden of proof shifted to
20  the Cerchiones to produce evidence establishing that their
21  claimed exemption was valid, even though the ultimate burden of
22  persuasion remained with the Trustee.  Id.

23      The Trustee argues that the bankruptcy court erred in its
24  conclusion because at the time of their bankruptcy filing, the
25  Cerchiones had never actually resided at the Property and further
26  had not signed and recorded a "Declaration of Homestead," citing
27  Idaho Code § 55-1004.  Idaho Code § 55-1004(2) provides in
28  relevant part:  "An owner who selects a homestead from unimproved

15

or improved land that is not yet occupied as a homestead must execute a declaration of homestead and file the same for record in the office of the recorder of the county in which the land is located."

However, the language of Idaho Code § 55-1008(1) does not require the recording of a Declaration of Homestead for debtors to be entitled to claim a homestead exemption once proceeds from the sale of a former homestead have been invested in a property in which they intend to reside. Since Idaho Code § 55-1008(1) includes specific references to Idaho Code § 55-1005, with its exceptions to homestead exemption protection, and Idaho Code § 55-1003, restricting the amount of a homestead exemption claim to no more than $100,000, the absence of a limiting reference to Idaho Code § 55-1004 is significant.

In fact, interpreting Idaho Code § 55-1008 in this manner avoids a trap for debtor home buyers. Following the Trustee's argument, a debtor's homestead exemption would end upon the expenditure of the proceeds from the sale of a prior home, absent the recording of a declaration of homestead. As the Trustee points out in his reply brief, the process of signing and recording a declaration of homestead is not elaborate or onerous. "[I]t is basically a one or two page document, and a small recording fee to record a declaration of homestead with the Bonneville County Recorder's office." Appellant's Reply Brief, at p. 9. In this appeal, what that would mean is the Cerchiones, who invested $100,000 from the proceeds of the sale of their prior home in their new home, who always intended to reside in the new home, and who in fact now reside in that home, would lose

1 their homestead exemption (and probably the home as a result) for
2 failure to sign and record a two-page piece of paper.   A liberal
3 interpretation of Idaho Code § 55-1008, consistent with its
4 terms, does not countenance such a result.

5    In addition, while Idaho Code § 55-1004 addresses homestead
6 abandonments and establishing homesteads generally in unimproved
7 or improved land, Idaho Code § 55-1008 deals specifically with
8 reestablishing or maintaining a homestead through the application
9 of proceeds from the sale of a prior homestead.   It is a general
10 principle of statutory construction that where there is a
11 potential conflict between general and specific statutory
12 provisions, the specific statutory provisions control over the
13 general.   See Simpson v. United States, 435 U.S. 6, 15 (1978);
14 Neary v. Padilla (In re Padilla), 222 F.3d 1184, 1192 (9th Cir.
15 2000) ("Statutory construction canons require that '[w]here both
16 a specific and a general statute address the same subject matter,
17 the specific one takes precedence regardless of the sequence of
18 the enactment, and must be applied first.'") (citations omitted).

19    In this case, the homestead exemption statute that
20 particularly concerns how proceeds from the sale of a homestead
21 are applied to maintain a homestead exemption claim (Idaho Code
22 § 55-1008(1)) does not contain a requirement that the terms of
23 Idaho Code § 55-1004 be complied with before a valid homestead is
24 established.   The absence of any such requirement bolsters our
25 conclusion that the bankruptcy court correctly interpreted Idaho
26 Code § 55-1008 to decide that the Cerchiones had a valid
27 exemption claim with respect to the Property at the time of their
28 bankruptcy filing.

17

In his Post-Hearing Motion, the Trustee argued in effect that even if the Cerchiones were entitled to claim a homestead exemption in the Property on the date of their bankruptcy filing, their exemption claim had expired by the time of the Hearing because they had neither resided at the Property nor filed a Declaration of Homestead with respect to the Property within one year following the closing date of the sale of their Meridian home.   While the bankruptcy court questioned whether the Trustee had ever raised any issue as to expiration of the Cerchiones' homestead exemption claim by the time of the Hearing, and the Cerchiones have argued that the Trustee should be judicially estopped from making that argument, the Trustee relies upon the terms of his objection to the Cerchiones' amended exemption claim in which he asserted that the Cerchiones had neither resided at the Property nor filed a Declaration of Homestead at any relevant time.

Ultimately, we conclude that the procedural questions as to whether the Trustee appropriately raised the issues of expiration of the Cerchiones homestead exemption and a reversionary interest of their bankruptcy estate in the Property do not make a difference.   Although Idaho Code § 55-1008(1) provides for a one-year deadline to reinvest cash proceeds from the sale of a homestead, there is no "one-year" limitation that applies once a new homestead has been acquired with such proceeds.   The exemption applies absolutely to "such new homestead acquired with such proceeds."   The Cerchiones invested $100,000 in the construction of a home on the Property before their bankruptcy filing, well within the year following the sale of their Meridian

18

home.  Thereafter they intended to occupy, and ultimately
occupied, the Property as their residence.  That is all that
Idaho Code § 55-1008 by its terms requires to entitle the
Cerchiones to claim their homestead exemption.

The Trustee further argues that by upholding the Cerchiones'
homestead exemption claim in this case, the bankruptcy court in
effect approved the creation of a "hidden" exemption.  That
argument is difficult to credit in bankruptcy, where debtors must
schedule their exemption claims under penalty of perjury in
Schedule C to take advantage of them.  In this case, the
Cerchiones scheduled their homestead exemption claim from the
outset, giving the Trustee ample opportunity to raise his
objection, which he did.  If a debtor attempts to use Idaho Code
§ 55-1008 to claim a homestead exemption in property where the
debtor does not intend to reside, the Trustee would have a valid
basis for objection under the terms of Idaho Code § 55-1008.
However, such is not the case here:  The evidence in the record
is uncontroverted that the Cerchiones always intended to reside
in the home constructed on the Property and, indeed, had begun
living at the Property by the time of the hearing on the
Trustee's Post-Hearing Motion.

We conclude that the bankruptcy court did not err as a
matter of law originally in determining that the Cerchiones were
entitled to claim a homestead exemption in the Property under
Idaho Code § 55-1008, and it did not err in denying the Trustee's
Post-Hearing Motion because it made no manifest error that would
justify revisiting its original determination.  The Cerchiones
were entitled to claim a homestead exemption in the Property when

19

1  they filed their bankruptcy petition, and they subsequently have
2  established residence at the Property.  That should end the
3  matter.

5  B.    Golden and Its Progeny Do Not Change the Result.

6        In England v. Golden (In re Golden), 789 F.2d 698 (9th Cir.
7  1986), applying California law, the Ninth Circuit affirmed the
8  decision of the bankruptcy court that if a debtor held exempt
9  proceeds from the sale of a homestead property on his bankruptcy
10 filing date, the proceeds lost their exempt status if they were
11 not invested in a new homestead by the deadline set in the
12 applicable state exemption statute.  See Ford v. Konnoff (In re
13 Konnoff), 356 B.R. 201 (9th Cir. BAP 2006); Gaughan v. Smith (In
14 re Smith), 342 B.R. 801 (9th Cir. BAP 2006) (both applying
15 Arizona law).  In Golden, the Ninth Circuit applied the general
16 principles that states are authorized under § 522(b)(2)(A) to
17 "opt out" of the federal exemption scheme, and applicable state
18 exemptions may be more or less generous than their federal
19 counterparts.  In re Golden, 789 F.2d at 700.

20       We interpret the rationale for the Golden decision as
21 follows:  Since the purpose of the homestead exemption in this
22 context is to allow a debtor to substitute one home for another
23 without a forced sale, and it is not intended to keep home sale
24 proceeds beyond the reach of creditors indefinitely, states can
25 make the decision appropriately to place a time limit on the
26 investment of sale proceeds in a new homestead.  "California law
27 requires reinvestment in order to prevent the debtor from
28 squandering the [homestead sale] proceeds for nonexempt

1   purposes." Id.

2       The Trustee relies on <u>Golden</u>, <u>Konnoff</u>, and <u>Smith</u> as support
3   for his argument that the Cerchiones' exemption in the Property
4   expired one year following the sale of their Meridian home
5   because they were not yet living on the Property, and they had
6   not signed and recorded a Declaration of Homestead with respect
7   to the Property by that deadline.  However, we conclude that the
8   <u>Golden</u> line of authority simply is not applicable here because on
9   the date of their bankruptcy filing, the Cerchiones already had
10  invested the exempt proceeds from the sale of their Meridan home
11  with the Bank to pay for the purchase of their homesite lot and
12  to fund construction of their new home.  They had no sale
13  proceeds left to "squander" for nonexempt purposes.  The one-year
14  limitation for reinvestment of homestead sale proceeds in another
15  homestead no longer applied, because cash sale proceeds already
16  had been reinvested in the Property, and as noted above, there is
17  no one-year limit set forth in Idaho Code § 55-1008 with respect
18  to "such new homestead acquired with such proceeds."

19

20                          **VI.  CONCLUSION**

21      Where the Cerchiones invested the exempt proceeds from the
22  sale of their prior homestead in a new home under construction
23  prior to their bankruptcy filing, and they established, without
24  any controverting evidence, that they intended to reside in the
25  new home and indeed, subsequently took up residence in the new
26  home on the Property, we conclude that the bankruptcy court did
27  not err in sustaining their homestead exemption claim.  We
28  further conclude that the bankruptcy court did not err in

1  declining to amend its decision to find that the Cerchiones'
2  homestead exemption expired when they did not establish residence
3  on the Property or record a Declaration of Homestead with respect
4  to the Property on or before one year following the closing date
5  of the sale of their Meridian, Idaho residence.  Accordingly, we
6  AFFIRM.

22

# U.S. Bankruptcy Appellate Panel
# of the Ninth Circuit

125 South Grand Avenue, Pasadena, California 91105
Appeals from Central California (626) 229-7220
Appeals from all other Districts (626) 229-7225

## NOTICE OF ENTRY OF JUDGMENT

**BAP No.: ID-09-1069-DJuMk**

**RE:        GUY TAYLOR CERCHIONE & CARLA MARIE CERCHIONE**

A separate Judgment was entered in this case on **09/08/2009.**

**BILL OF COSTS:**

Bankruptcy Rule 8014 provides that costs on appeal shall be taxed by the Clerk of the
Bankruptcy Court. Cost bills should be filed with the Clerk of the Bankruptcy Court from which
the appeal was taken. 9th Cir. BAP Rule 8014-1

**ISSUANCE OF THE MANDATE:**

The mandate, a certified copy of the judgment sent to the Clerk of the Bankruptcy Court from
which the appeal was taken, will be issued 7 days after the expiration of the time for filing a
petition for rehearing unless such a petition is filed or the time is shortened or enlarged by order.
See Federal Rule of Appellate Procedure 41.

**APPEAL TO COURT OF APPEALS:**

An appeal to the Ninth Circuit Court of Appeals is initiated by filing a notice of appeal with the
Clerk of this Panel. The Notice of Appeal should be accompanied by payment of the $455 filing
fee and a copy of the order or decision on appeal. Checks may be made payable to the U.S. Court
of Appeals for the Ninth Circuit. See Federal Rules of Appellate Procedure 6 and the
corresponding Rules of the United States Court of Appeals for the Ninth Circuit for specific time
requirements.

<u>CERTIFICATE OF MAILING</u>

The undersigned, deputy clerk of the U.S. Bankruptcy Appellate Panel of the Ninth Circuit, hereby certifies that a copy of the document on which this certificate appears was transmitted this date to all parties of record to this appeal.

**By:** Vincent Barbato, Deputy Clerk

**Date:** September 8, 2009